**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| ANGEL PARIS-MENDEZ, | No. 17-72290 |
| Petitioner, | Agency No. A205-150-737 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 15, 2020**
San Francisco, California

Before:  FRIEDLAND and BENNETT, Circuit Judges, and RAKOFF,*** District
Judge.

Angel Paris-Mendez, a native and citizen of Mexico, petitions for review of

an order of the Board of Immigration Appeals ("BIA") denying his motion to

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*      The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

remand and affirming a denial by the Immigration Judge ("IJ") of his motion for a continuance, his application for asylum and statutory withholding of removal under the Immigration and Nationality Act, and his application for protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We grant the petition with respect to the BIA's denial of the petitioner's motion to remand, but deny it in all other respects.

To begin with, we affirm the BIA's holding that the IJ did not abuse his discretion in denying the petitioner's motion for a continuance. Both reasons that the petitioner proffered to establish "good cause" for a continuance fail. 8 C.F.R. § 1003.29. First, his counsel decided not to prepare for an individualized hearing on September 20, 2016 until a few days prior, when she had five months to do so. Clearly, this did not justify a continuance. Her failure to prepare, moreover, was based on an unsupported and uncorroborated assumption that the U.S. Department of Homeland Security would administratively close the case.[1] Second, with respect

---

[1] The record contradicts the petitioner's counsel's assertion that "the available court records and minutes prior to September 20, 2016 did not indicate that Petitioner was incarcerated for more than 90 days," which disqualified the petitioner from administrative closure. As one example among many, the IJ's written decision from the removal hearing on December 16, 2013 states: "although the respondent was apparently sentenced to 180 days in prison, he indicated in his testimony that he was released early, after having served 4.5 months." Moreover, in the motion that the petitioner's counsel filed on behalf of her client to reopen the case on November 30, 2015, she herself wrote that her client's "arrest only resulted

2

to the assertion that the petitioner's counsel learned for the first time on the morning of the hearing that the petitioner identified himself as a Jehovah's Witness and that he allegedly suffered persecution in Mexico because of his religion, it is puzzling that the petitioner's counsel was so informed at the last minute, when she had previously helped the petitioner with completing his Form I-589, Application for Asylum and for Withholding of Removal (where his religion-based fear was not mentioned). Also, the petitioner had multiple opportunities to mention his religion-based fear during the four years he had been in the removal proceedings, but he never did so. Consequently, the IJ did not abuse his discretion in denying the request for a continuance.

In addition, we find upon *de novo* review that the agency did not err in holding that the petitioner had not established an exception to the requirement to file his asylum application within a year after the date of his arrival in the United States.[2] *See* 8 U.S.C. § 1158(a)(2)(B). He had not shown "[c]hanges in conditions"

---

in a trespassing conviction for which he served a jail sentence of four and half months."

[2]    The petitioner arrived in the United States in 2005 but did not file his asylum application until 2015. Although we generally lack jurisdiction to review the agency's determination on the applicability of an exception to the one-year filing deadline, *see* 8 U.S.C. § 1158(a)(3), a carve out exists for "questions of law raised upon a petition for review," 8 U.S.C. § 1252(a)(2)(D). Contrary to the Government's assertion, the instant issue qualifies as a question of law—which we previously defined to include "review of the application of statutes and regulations to undisputed historical facts." *Ramadan v. Gonzales*, 479 F.3d 646, 654 (9th Cir.

in Mexico, and his 2015 asylum application was not filed within a "reasonable period" from when he allegedly learned about his brother's criminal activity, which occurred no later than December 2013. 8 C.F.R. § 1208.4(a)(4)(ii); *see also Husyev v. Mukasey*, 528 F.3d 1172, 1178–81 (9th Cir. 2008) (holding that a 364-day delay in filing an asylum application after the expiration of an alien's lawful nonimmigrant status was not a "reasonable period"). His alleged fear of persecution based on his religious beliefs dates back to before he first entered the United States. Also, his claim for ineffective assistance of prior counsel did not toll his one-year filing requirement, because he cannot show prejudice from any deficient performance given that his fear of returning to Mexico was neither subjectively genuine nor objectively reasonable, based on adverse credibility determinations discussed below.

Substantial evidence supports the agency's decision to deny the application for asylum and statutory withholding of removal based on adverse credibility determinations. *See Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). For instance, the petitioner could not give consistent answers regarding when he

2007) (footnote omitted); *see also Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020). The agency's determination did not depend on a resolution of an inconsistent fact in the record regarding when the petitioner learned of his brother's gang affiliation. Rather, it held that, even under the most generous assumption regarding when the petitioner learned as much, his asylum application was not timely, and the agency also relied on the undisputed fact that his alleged fear based on religion existed prior to entering in the United States.

4

learned of his brother's affiliation with the Los Zetas cartel and why he wanted to remain in the United States. Furthermore, his professed faith in Jehovah's Witnesses was contradicted by his inability to name the church he claimed to have attended for at least ten years and his failure to obtain a replacement after allegedly losing a blood card. Most damaging to his credibility, the petitioner failed to mention *anything* about his fear of returning to Mexico based on his brother's gang membership or his religion during the earlier years of his proceeding. Such credibility determinations strongly support the finding that the petitioner had not established that, on account of protected grounds, he had suffered past persecution, had a well-founded fear of future persecution, or faced "clear probability that his life or freedom would be threatened," *Shrestha*, 590 F.3d at 1039 (quotation marks and citation omitted), if removed. *See* 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A), 1231(b)(3)(A).

Furthermore, substantial evidence supports the agency's determination that the petitioner did not qualify for CAT protection, because he failed to show that "it [was] more likely than not that he . . . would be tortured if removed" to Mexico. 8 C.F.R. § 1208.16(c)(2). The petitioner never claimed to have been a victim of torture in Mexico. *See* 8 C.F.R. § 1208.16(c)(3)(i). Also, the likelihood that the petitioner would face torture because of his association with his brother is entirely speculative, because, *inter alia*, none of his family members living in Mexico had

5

suffered any harm and the petitioner had not maintained contact with his brother.[3]

The petitioner's assertion of generalized fear based on the 2015 Human Rights Report for Mexico and other articles related to Mexican cartels fails to establish that he faced a sufficient individualized risk of torture. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010).

Notwithstanding all the above, however, we find that the BIA abused its discretion in denying the petitioner's motion for remand. After the IJ rendered his decision, the petitioner married a then-lawful permanent resident of the United States and moved the BIA to remand his case on the ground that he was entitled to new relief previously unavailable. *See* 8 C.F.R. § 1003.2(c)(1), (4). In his motion, the petitioner included copies of his marriage certificate; a filing receipt for his wife's Form N-400, Application for Naturalization; an affidavit by his wife describing the history of their relationship; and his visa application packet

---

[3]     An application for CAT protection is an "analytically separate" claim from an application for asylum and statutory withholding of removal. *Almaghzar v. Gonzales*, 457 F.3d 915, 921 (9th Cir. 2006) (citing *Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001)). Although the BIA could have more clearly separated the analyses of the two by relying less on the adverse credibility findings for asylum and withholding claims to uphold the IJ's denial of application for CAT protection, such shortcoming was overcome in two respects. First, the IJ independently analyzed the CAT claim under the CAT framework, without invoking adverse credibility determinations made in the context of analyzing the asylum and withholding claims. Second, the BIA's statement that "[a] general fear of societal violence is not sufficient to establish a clear probability of torture" shows that the BIA did not entirely subsume the CAT analysis under the asylum and withholding analysis, the main concern in *Kamalthas*.

including Form I-130, Petition for Alien Relative. In denying the motion for remand, the BIA abused its discretion in holding that the respondent "has not shown that the visa petition has actually been filed and is pending," while ignoring the submitted copy of the visa application packet, which contained prima facie evidence supporting the availability of the relief sought. *Cf. Najmabadi v. Holder*, 597 F.3d 983, 986 (9th Cir. 2010) (holding that the BIA may deny a motion to reopen, which has the same standard as when ruling on a motion to remand, on grounds of "failure to establish a prima facie case for the relief sought" or "failure to introduce previously unavailable, material evidence" (quotation marks and citation omitted)). In addition, the BIA abused its discretion in holding that the petitioner had not demonstrated that his wife was eligible for naturalization, when he submitted evidence that his wife had a pending application for naturalization in front of the U.S. Citizenship and Immigration Services.[4]

Accordingly, the petition for review is **GRANTED IN PART** with respect to the BIA's denial of the petitioner's motion to remand, and the matter is remanded to the BIA with instructions that it reevaluate the petitioner's motion to remand for consideration of the petitioner's eligibility for new relief, based on his marriage, previously unavailable. The petition is otherwise **DENIED**.

The parties are to bear their own costs.

---

[4]     Indeed, the petitioner's spouse is now a United States citizen.